HYGRADE OPERATORS, INC., as Owner of the Barge ST–18 and Spentonbush/Red Star Companies, Inc., as Operator of the Barge ST–18, Plaintiffs,

v.

The TUG TAHCHEE, her engines and tackle, etc., in rem and Seariver Maritime, Inc., as Owner and Operator of the Tug Tahchee, in personam, Defendants.

No. 2:01–CV–116(DRD).

United States District Court, D. New Jersey.

Sept. 24, 2003.

Hill, Betts & Nash LLP, Newark, NJ, By James M. Hazen, Susan P. Mahon, for Plaintiffs.

Kenny & Stearns, Newark, NJ, By Gino A. Zonghetti, for Defendants.

## *OPINION*

DEBEVOISE, Senior District Judge.

Plaintiffs, Hygrade Operators, Inc., as Owner of the Barge ST–18 and Spentonbush/Red Star Companies, Inc., as Operator of the Barge ST–18 (collectively "plaintiffs") instituted this admiralty action against defendants, The Tug Tahchee, her engines and tackle, etc., in rem and Sea River Maritime Inc., as Owner and Operator of the Tug Tahchee, in personam, (collectively "defendants"). The action arises out of a January 12, 1995 collision between the tug Tahchee and the light barge ST–18 which was under the navigation control of the tug Cheyenne. Plaintiffs claim that the captain of tug Tahchee was negligent and that this negligence was the cause of the collision. Defendants claim that the collision was the direct result of the captain of tug Cheyenne's violation of maritime rules of the road and negligence.

A trial was held on August 12 and 13. This opinion constitutes the court's findings of fact and conclusions of law.

### *The Facts*

On January 12, 1995 at approximately 0900 hours, the light barge ST–18 under the navigational control of the tug Cheyenne departed from the Amerada Hess Corporation ("Hess") facility located in Perth Amboy, New Jersey. The ST–18 measures approximately 242 feet in length and 69 feet in width. The tug Cheyenne, operated by plaintiff Spentonbush/Red Star Companies, Inc., is an 1,800 horse power, single engine, single screw, single

rudder tug. It measures approximately 84 feet in length and 28 feet in width.

The flotilla was bound for the Hess facility located at Bayonne, New Jersey. The ST–18 was a light barge, not transporting cargo. It was made up to the starboard side of the Cheyenne, stern first. The starboard bow of the Cheyenne was at an angle into the working port side of barge ST–18. The stern of the tug was canted out. The working stern of the barge was approximately even with the stern of the tug, and consequently the working bow of the barge was approximately 150–160 feet in front of the bow of the tug. At the time of departure visibility was 1/4 to 1/2 mile in fog. In the wheelhouse of the Cheyenne were Captain Richard Reilly, John Kirkconnell, the training mate, and deckhand Raymond C. Pierre. Kirkconnell was steering and Captain Reilly was giving helm and engine orders. The northbound Cheyenne/ST–18 flotilla was transiting the Arthur Kill against an ebb tide.

The twin screw tug Tahchee, piloted by Captain Edward Flynn, departed from the IMTT Bayonne, New Jersey fuel dock at about 0820. The Tahchee is 102.61 feet in length, 30 feet in width and draws 15 feet. Visibility was one mile to one and one-half mile due to fog. Tug Tahchee headed south in the Arthur Kill moving with the ebb tide.

Thickening fog decreased the visibility for both the Cheyenne and tug Tahchee to approximately 300 feet. About two-tenths of a mile past buoy 24 Captain Flynn on the tug Tahchee initiated radio contact with the tug Cheyenne approaching from the opposite direction. Subsequently the Tahchee rounded Tufts Point where there is a sharp bend in the channel to the west. The projected width of the channel at Port Reading Reach is 500 feet.

Proceeding through the fog Captain Flynn communicated again with tug Cheyenne and gave the position of tug Tahchee as rounding buoy 17 off Tufts Point and informed the Cheyenne that the passing of the vessels would be a one whistle, port to port passing. The crew of the Cheyenne acknowledged the message.

Shortly afterwards Charles Syversten, Tahchee's deckhand observed the ST–18. The Tahchee turned hard right in an effort to clear ST–18. The evasive actions of the two tugs did not prevent the port stern of the Tahchee from swinging into and colliding with the working bow of the ST–18.

The resulting damages have been stipulated. The ST–18 was caused physical damage in the amount of $41,222.00. Plaintiffs expended $870.00 for gas freeing fees required in repairing barge ST–18. Plaintiffs spent $2,105.00 in surveyor's fees required to assess damages to barge ST–18 and tug Tahchee. Plaintiffs spent $15,950.00 chartering-in barges to replace ST–18 during the period from January 12, 1995 and January 20, 1995. Plaintiffs incurred $1,600 for transportation expenses for towing the ST–18 to and from the repair facilitate, Tahchee was caused physical damage in the amount of $6,250.00. Defendants expended $1,670.00 in surveyor's fees required to assess damages to the Tahchee and barge ST–18.

Plaintiffs contend that Tahchee violated Inland Rule 34, 33 U.S.C. § 2034 by failing to sound the danger signal and reverse its engines instead of increasing its speed and placing its rudder hard right. Its actions, plaintiffs contend, caused Tahchee to lose its ability to make head way in the water, placing it in a skid that caused the collision of the port stern of the Tahchee with the working bow of ST–18. Plaintiffs assert that the Cheyenne was observing all the rules of the road and was on the proper side of the channel.

Defendants, on the other hand, contend that Captain Flynn took appropriate action under the circumstances and that

there was insufficient time to avoid a collision by giving at least five short and rapid blasts on the whistle and after sounding the danger signal give three short blasts to indicate operating astern. Further, defendants contend that the actions and inactions of the Cheyenne violated the "Narrow Channel Rule" by not keeping to the outer limit of the channel on Cheyenne's starboard side, violated Rule 5, 33 U.S.C. § 2005, by failing to place a lookout on the barge, violated Rule 8, 33 U.S.C. § 2008 by failing to take action to avoid collision and violated Rule 6 by proceeding at an excessive rate of speed.

Finally defendants contend that the action is barred by the doctrine of laches because they did not start their suit until almost six years after the collision—January 10, 2001.

There are certain conflicts in the testimony and reports of the vessels' captains and crew as to the details relating to the critical, relatively short period preceding the collision. This is understandable in light of the heavy fog and the rapidity with which the critical actions took place.

There is agreement that during the time when the two tugs had observed each other on radar and had communicated by radio, the fog had thickened so that visibility was about 300 feet. The width of the channel was 500 feet and the ebb tide was flowing at about 1 knot. Both vessels were proceeding at approximately 3 to 3.5 knots, a speed just sufficient to preserve steerage way. Charles Syversten, the deckhand on the Tahchee, testified that the Cheyenne was traveling at high speed, or full ahead when he first saw her. This was based upon his observation of the barge's bow wave. Captain Reilly testified that between buoys 15 and 16 he slowed down to 3 to 4 knots. That was only a short distance from the site of the collision. The reports of members of Cheyenne's crew and Captain Reilly's testimony were to the effect that Cheyenne was proceeding at steerage speed at the time of the collision. In view of the fog and the short period of time when Syversten saw Cheyenne and barge ST–18, Syversten's conclusion about Cheyenne's speed was probably inaccurate. The reports of the member of the barge crew that he saw Tahchee passing two feet from the barge's working bow at approximately eight knots must be discounted. He was in the galley and saw Tahchee through a port hole or window after Tahchee went hard right. He was in no position to make an accurate observation.

The events that immediately preceded the collision can be reconstructed from the testimony and the various reports that the captains and crew members filed.

Just south of the buoy 24 Captain Flynn of the Tahchee communicated by radio with Captain Reilly of the Cheyenne, advising him of his position and direction of transit. They agreed on a one whistle, port to port passing. Shortly afterwards he approached and rounded Tufts Point. He observed buoys 21 and 17 about 30 feet from Tahchee's starboard side. Syversten testified that Tahchee passed buoy 17 not more than 15 feet from it and that Tahchee was traveling at the extreme starboard (New Jersey) side of the channel.

The Cheyenne was traveling in the centerline of the channel and a part of the tug and barge extended over the center line towards the New Jersey shore.

When Tahchee rounded Tufts Point each tug observed the other on radar. Both radars indicated that the vessels were traveling head on towards each other. Captain Flynn again communicated by radio with Cheyenne stating the passing would be one whistle. He instructed Syversten to keep a sharp look out as the relative closure rate appeared on the radar

screen to be quite rapid. Captain Reilly on the Cheyenne ordered "easy right."

At the same time the Cheyenne, apart from its radar, was traveling virtually blind. Visibility was about 300 feet. In the wheelhouse were the training mate Kirkconnell who was steering, Captain Reilly who was giving helm and engine orders and deckhand Pierre who presumably was functioning as a lookout. There were two crew members on the barge but they were in the galley. The Cheyenne's stern was approximately even with the working stern of the barge. Thus the 242 foot barge extended at least 150 feet in front of the bow of the 84 foot Cheyenne. Because the wheelhouse was approximately 15 feet aft of the bow of the Cheyenne, at best the lookout's visibility was less than 135–150 feet in the fog. Visibility, however, was further impaired by the barge's deckhouse which obscured the lookout's forward line of vision and explains why Captain Reilly's first sighting of the Tahchee was of its masts. On making that observation Captain Reilly ordered hard right.

The critical events took place in a very short span of time. When Tahchee was approaching Tufts Point Captain Flynn and Captain Reilly agreed on a one whistle port to port poising. Within minutes Captain Reilly saw Tahchee on radar coming around Tuft's Point heading towards the Cheyenne. He gave Kirkconnell the "easy to right" order.

On Tahchee Captain Flynn was watching the Cheyenne on his radar screen. He told Syversten to keep a sharp lookout. Suddenly out of the fog Syversten saw the barge ST–18 heading rapidly towards the Tahchee. He immediately recommended to Captain Flynn to go hard right. The Tahchee went hard right but before being able to execute a hard left its stern clipped the forward area of the ST–18, resulting in damage both to the Tahchee and the barge. The extent of the damages has been stipulated.

## Conclusions of Law

■ The conduct of the vessels involved in this case is governed by the Inland Regulations for Preventing Collisions at Sea, 1972 33 U.S.C. § 2001, et seq. Violation of a statutory duty invokes *The Pennsylvania* rule. *The Pennsylvania*, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148 (1874). Under that rule, a ship violating a statutory rule intended to prevent collisions bears the burden of proving not only that its actions might not have been one of the causes of the collision, or that its actions probably were not a cause of the collision, but that the vessel's actions could not have been a cause of the collision.

■ It is plaintiffs' contention that Tahchee, the more maneuverable vessel involved in the collision violated Inland Rule 34, 33 U.S.C. § 2034:

When power-driven vessels are in sight of one another and meeting or crossing at a distance within half a mile of each other, each vessel underway, when maneuvering as authorized or required by these Rules:

(a) Whistle signals

(i) shall indicate that maneuver by the following signals on her whistle: one short blast to mean "I intend to leave you on my port side"; two short blasts to mean "I intend to leave you on my starboard side"; and three short blasts to mean "I am operating astern propulsion."

\* \* \* \* \* \*

(d) Doubts or failure to understand signals

When vessels in sight of one another are approaching each other and from any cause either vessel fails to understand the intentions or actions of the other, or

is in doubt whether sufficient action is being taken by the other to avoid collision, the vessel in doubt shall immediately indicate such doubt by giving at least five short and rapid blasts on the whistle. This signal may be supplemented by a light signal of at least five short and rapid flashes.

Plaintiffs argue that Rule 34 required the Tahchee to sound the danger signal and reverse its engines to avoid the collision instead of increasing its speed and placing its rudder hard right. The action taken, according to plaintiffs, caused Tahchee to lose its ability to make headway in the water and to go into a skid, resulting in the collision of the port stern of the Tahchee with the working bow of ST–18.

The court concludes that Tahchee did not violate Inland Rule 34. The Tahchee and the Cheyenne with its barge were closing so rapidly that there was insufficient time for Tahchee to shift gears into reverse and cease forward motion. It was a matter of seconds between the time Syversten observed the ST–18 and the collision. Had the Tahchee commenced giving five blasts on its whistle and placed its engines in reverse there would have been a much more damaging head-on collision. Tahchee's only option was to seek to evade the ST–18 and the Cheyenne by means of a hard right and then a hard port to clear the barge. The maneuver was successful in that it avoided a head on collision. It was unsuccessful in that time did not permit completion of the maneuver so as to avoid ST–18 altogether. In the event the ST–18 suffered only a glancing blow that did not cause catastrophic damage or personal injury or death.

The court further concludes that the Cheyenne violated several Rules contained in the Inland Regulations, the violations of which singly and in combination caused the collision without any fault on the part of the Tahchee.

As stated previously it appears that Cheyenne was proceeding at a speed only sufficient to maintain steerage way. Consequently it was not in violation of Rule 6 33 U.S.C. § 2006, which requires every vessel "to proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions." Had the Cheyenne not violated other Rules, her speed would not have caused or contributed to the collision.

■ Rule 5, 33 U.S.C. § 2005, requires that every vessel " . . . shall at all times maintain a proper lookout by sight and hearing as well as all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision." This Captain Reilly did not do. As described above he and his lookout in the wheelhouse were traveling virtually blind in a fog which limited visibility to 300 feet. The 242 foot barge extended more than 150 feet in front of the bow of the Cheyenne and the wheelhouse was approximately 15 feet aft of the tip of the bow. Further, the barge's wheelhouse obscured what little vision was available. Failure to place a lookout on the head of the barge violated Rule 5. *St. Philip Offshore Towing Co., Inc. v. Wisconsin,* 466 F.Supp. 403, 410 (E.D.La.1979). Had there been a lookout on the working bow of the barge he would have observed the on-coming Tahchee sooner permitting Captain Reilly to go hard right sooner than he did.

In all probability this maneuver in conjunction with Captain Flynn's hard right would have enabled to two tugs and the barge to pass each other without a collision with the barge.

■ The navigable channel in the area in which the Tahchee and the Cheyenne were traveling, the Kill Van Kull, was

approximately 500 feet in width. This constituted a "narrow channel." See *Red Star Towing & Transportation Company v. Catherine*, 305 F.Supp. 639, 642 (S.D.N.Y.1969). Rule 9, 33 U.S.C. § 2009, entitled "Narrow channels" reads:

(a) Keeping near to outer limit of channel or fairway which lies on vessel's starboard side; exception

(i) A vessel proceeding along the course of a narrow channel or fairway shall keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable.

According to Captain Reilly's testimony (corroborated by Kirkconnell's post accident report) the Cheyenne was in the center of the channel, extending over the center line towards the New Jersey shore. Syversten's testimony (corroborated by the post accident report of Captain Flynn) establishes that the Tahchee, if not hugging the New Jersey channel line, was on the New Jersey side of the center line. Captain Reilly testified that the barge on the starboard side of the Cheyenne required that he remain in mid-channel, but the barge was light, drawing only two feet, and the Cheyenne and barge could have operated closer to the New York side of the channel which had a water depth of 36 feet. This was demonstrated when Captain Reilly ordered right easy upon seeing the Tahchee on his radar screen coming directly down the Cheyenne's radar heading. The Tahchee was already close to the New Jersey side of the channel.

Thus the Cheyenne violated Rule 9. Had he observed the Rule the collision would have been avoided.

■ By the same token the Cheyenne violated Rule 8, 33 U.S.C. § 2008 which provides:

(a) General characteristics of action taken to avoid collision

Any action taken to avoid collision shall, if the circumstances of the case admit, be positive, made in ample time and with due regard to the observance of good seamanship.

(b) Readily apparent alterations in course or speed

Any alteration of course or speed to avoid collision shall, if the circumstances of the case admit, be large enough to be readily apparent to another vessel observing visually or by radar; a succession of small alterations of course or speed should be avoided.

(c) Alteration of course to avoid close-quarters situation

If there is sufficient sea room, alteration of course alone may be the most effective action to avoid a close-quarters situation provided that it is made in good time, is substantial and does not result in another close-quarters situation.

(d) Action to result in passing at safe distance

Action taken to avoid collision with another vessel shall be such as to result in passing at a safe distance. The effectiveness of the action shall be carefully checked until the other vessel is finally past and clear.

When Captain Reilly saw the Tahchee coming down directly on the Cheyenne's heading line he ordered Kirkconnell to turn "easy right." In the dense fog that prevailed, with the two tugs closing on each other he should have maneuvered the Cheyenne off the channel center line as quickly as possible. That called for a hard right to bring the tug and the ST–18 closer to the New York side of the channel. That too would have prevented the collision that soon occurred.

Thus although the Cheyenne did not violate Rule 6 (safe speed) of the Inland

Regulations for Preventing Collisions at Sea, it violated Rule 5 (maintaining a lookout), Rule 8 (action to avoid collision) and Rule 9 (Narrow Channel Rule). Plaintiffs have not established that these violations were not, or could not have been, a cause of the collision. Defendants have proved that these violations both singly or in combination caused the collision that occurred on January 12, 1995.

In light of the conclusion that plaintiffs were at fault and the sole cause of the collision it is unnecessary to address defendants' contention that their action is barred by the doctrine of laches.

### *Conclusion*

Plaintiffs' action for liability and damages will be dismissed. Defendants will be awarded damages in the amount of $7,920.00 together with interest and costs. An appropriate order will be filed.